UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

KEISHA LATRICE JOHNSON,                    )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )     No.  1:14CV28 TIA
                                           )
CAROLYN W. COLVIN,                         )
Commissioner of Social Security,           )
                                           )
          Defendant.                       )

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

suit involves Applications for Disability Insurance Benefits under Title II of the Social Security

Act and for Supplemental Security Income under Title XVI of the Act.  Claimant has filed a Brief

in Support of her Complaint, and the Commissioner has filed a Brief in Support of her Answer.

The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On February 1, 2011, Claimant Keisha Latrice Johnson filed Applications for Disability

Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 171-77) and for

Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42

U.S.C. §§ 1381, et. seq.  (Tr. 165-70).[1]  Claimant states that her disability began on October 1,

2010,[2] as a result of depression, inability to focus, anxiety, and back problems.  (Tr. 70, 87, 208).

---
[1]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer
(Docket No. 12/filed May 16, 2014).

[2]Although Claimant originally alleged an onset date of February 15, 2010 in her applications,
at the hearing, she amended her onset date to June 30, 2011.  (Tr. 16, 36,184).

On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 87-91). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 92-93). On November 7, 2012, a hearing was held before an ALJ. (Tr. 41-69, 122-40). Claimant testified and was represented by counsel. (Id.). Vocational Expert Dr. Chrisann Schiro-Geist also testified at the hearing. (Tr. 64-67). Thereafter, on March 4, 2013, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 8-19). After considering the treatment notes from Missouri Southern Healthcare and Bootheel Counseling Services, the Appeals Council found no basis for changing the ALJ's decision on February 10, 2014. (Tr. 1-6). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on November 7, 2012

#### 1. Claimant's Testimony

At the hearing on November 7, 2012, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 44-63). At the time of the hearing, Claimant was twenty-eight years of age, and her date of birth is August 9, 1984. (Tr. 44). She is right-handed. Claimant lives in an apartment with her fifteen-month old daughter. (Tr. 45). Her daughter weighs twenty-five pounds. (Tr. 49). She completed the ninth grade. (Tr. 45).

Claimant testified that she could no longer work as of October 1, 2010, because she wants to sleep all day and does not want to go outside. (Tr. 46). She testified that a counselor in New Madrid treats her, but she has to wait until the office calls her back so the counselor can start treating her again. (Tr. 46). She takes medications for depression, anxiety, blood pressure, and arthritis prescribed by Dr. Domjan and Dr. Tracy. (Tr. 47). She has arthritis in her lower back,

and the medicine does not help. (Tr. 48). All of her medications taken together calms her down. (Tr. 49).

Claimant does her own laundry and cooking. (Tr. 49). Her mother helps her with the grocery shopping. (Tr. 50). She cannot stand for a long period of time. (Tr. 50). Two weeks earlier, she started to wear a brace provided by pain management. (Tr. 51). Two months earlier, she received a shot as treatment. (Tr. 52). Her mother visits twice a week and helps care for her daughter. (Tr. 55).

Claimant testified that she last worked at a job for her mother, because everywhere else she worked she was fired. (Tr. 55). As a participant in the Home Health Service program, her mother selects someone to provide home care, and Claimant works eleven hours a week helping her mother clean her house. (Tr. 61-62). Before working for her mother, she worked at a nursing home, but she was fired for being too slow and clumsy. (Tr. 57). Before that job, she worked at another nursing home but was fired. Claimant explained how she never works long before she is fired. (Tr. 57). Her duties included lifting, feeding, and bathing residents. (Tr. 58). Close to Home terminated her in 2010 for sleeping on the job. (Tr. 59). Claimant testified she would not be able to work every day because of her depression and pain. (Tr. 63).

## 2. Testimony of Vocational Expert

Vocational Expert Dr. Chrisann Schiro-Geist testified in response to the ALJ's questions. (Tr. 64-67). The ALJ asked Dr. Schiro-Geist to assume Claimant has no past relevant work. (Tr. 65).

The ALJ asked Dr. Schiro-Geist to assume

a hypothetical individual of Ms. Johnson's age, education and work experience and

assume that person would be limited to lifting 20 pounds on occasion and ten pounds frequently; could stand and/or walk at least six hours out of an eight-hour workday and could sit at least six. And also that the person would be limited to simple and/or repetitive work that didn't require close interaction with the public or coworkers. And that had few, if any, changes in work settings, work processes and work locations. With those restrictions would there be jobs that could be performed?

(Tr. 65). Dr. Schiro-Geist responded yes, based on the hypothetical, such individual could perform jobs at the light exertional level such as assembly line work with 47,068 jobs regionally and 2,350,000 available nationally, and hand packing with 14,734 jobs regionally and 735,000 available nationally. (Tr. 65-66). Dr. Schiro-Geist responded no his answer would not change if the ALJ added to the hypothetical the individual could only occasionally stoop and crouch. (Tr. 66). Dr. Schiro-Geist indicated her response would not change if the ALJ restricted the individual to avoid climbing ladders, ropes and scaffolds and working at unprotected, dangerous height and around unprotected, dangerous machinery. (Tr. 66).

Next, the ALJ asked Dr. Schiro-Geist to assume

the person would be limited to sedentary work and would be a maximum lift of ten pounds and a maximum stand and/or walk of about two hours. And assume all the other restrictions, including the postural and climbing and working at heights. Would there be sedentary jobs that could [be] performed within those restrictions?

(Tr. 66). Dr. Schiro-Geist Ms. Bose responded the number of jobs available would drop. (Tr. 66).

The ALJ asked Dr. Schiro-Geist to assume for some medical reason, the individual would consistently miss more than two days a month at the jobs described, would that preclude competitive employment in those jobs after a brief period? (Tr. 67). Dr. Schiro-Geist responded yes. When asked if competitive employment would be precluded in the jobs described if the

- 4 -

individual had to appear late or leave work early or step away from the work setting the equivalent of an additional break time, randomly and never predictably during the week but at least once a week for some medical reason, Dr. Schiro-Geist opined competitive employment would be precluded. (Tr. 67).

### 3. Forms Completed by Claimant

In the Disability Report - Adult, Claimant reported she stopped working on October 1, 2010 because of her condition(s) and other reasons, she was fired. (Tr. 208).

In the Disability Report - Field Office dated February 1, 2011, the interviewer noted:

> Throughout the entire phone interview, the claimant took about 15 to 20 seconds (and sometimes longer) to begin to answer the question. Sometimes she wouldn't speak or answer at all until I had repeated the question c couple of times, and even then it took some prompting to get her to at least give an answer of some kind. During the last 15 minutes of the lengthy phone interview, the claimant was eating potato chips and would answer between mouthfuls (after the standard pause of 15 to 20 seconds, of course).

(Tr. 194).

## III.    Medical Records and Other Records

To obtain disability insurance benefits, Claimant must establish that she was disabled within the meaning of the Social Security Act not later than the date her insured status expired - December 31, 2015. Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status."); see also 42 U.S.C. §§ 416(I) and 423(c); 20 C.F.R. § 404.131.

The admitting doctor, Dr. John Wilkaitis, diagnosed Claimant with depression. (Tr. 243). Claimant was admitted on June 7, 2006 on a voluntary basis due to having suicidal ideations on referral by Delta Medical Center. (Tr. 244). She reported a combination of depression and stress

have caused her suicidal ideations.  She has problems with an abusive ex-boyfriend, and she has an ex parte order against him.  On the date of admission, he caused her to be terminated from her job.  She has not been treated by a psychiatrist or a therapist.  (Tr. 244, 250).  She has been in a relationship since the age of thirteen with a person who has been physically and mentally abusive.  (Tr. 245).  She reported not having any support or family close to her and an abusive mother.  (Tr. 249).  Claimant reported fracturing her spine in an automobile accident and being treated with analgesics.  (Tr. 251).  In the assessment, it is noted "Positive urine drug screen noted."  (Tr. 255).

Dr. Wilkaitis noted Claimant has a fair amount of legal issues including two years earlier, she had been arrested for possession of crack cocaine, and she spend eight months in the county jail.  One month earlier, she pawned a computer that had been stolen from the police department and was tracked back to her.  Claimant last worked at White's and Associates, but she was terminated because of her boyfriend's telephone call to her employer, and her employer found out about the issue of the stolen computer.  (Tr. 245, 250).  She reported having a daily marijuana habit until two months earlier.  (Tr. 246).  She has been clean for two months and has been in treatment at Family Counseling Center on an outpatient basis and has been in drug class for marijuana previously.  (Tr. 246).  Claimant is on probation for possession of an illicit substance with over two years to be served.  (Tr. 250).  She smokes one package of cigarettes a day.  (Tr. 250).  Claimant reported leaving school after the tenth grade because of her boyfriend.  (Tr. 246).  One of her step dads was physically abusive.  (Tr. 247).

Dr. Leanne Duncan noted in the mental status Claimant to be oriented to place, person and situation.  Claimant denied having any auditory or visual hallucinations.  Her affect is

congruent with her mood alright. (Tr. 247). Adjustment disorder was listed in the diagnostic formulation. (Tr. 248). She has moderate stressors including legal, primary support, financial, lack of support system, and unemployment. (Tr. 248-49). Dr. Duncan noted that her medications would be adjusted , and she would participate in individual and group psychotherapy. (Tr. 248). In the discharge summary, it is noted that Claimant withdrew without advice. (Tr. 243).

On March 10, 2011, Dr. Ben Lanpher, a licensed psychologist, completed a psychological evaluation on referral by Disability Determinations for the purpose of assessing Claimant's ability to engage in work-related activities. (Tr. 288). Dr. Lanpher noted she is alleging back problems, "inability to focus," depression, and anxiety as her basis of disability. Her current medications include only prenatal vitamins. She reported seeing ghosts, and having back problems associated with a car accident, but she could not give a time frame from the accident. Although she claims she broke her back, she reported no history of surgery and being four months pregnant. Claimant reported taking only prenatal vitamins and having been prescribed antidepressant medications in the past. (Tr. 288). With respect to employment, she reported having worked in nursing homes but she was told she was too slow. (Tr. 289). For activities of daily living, she indicated that she lives alone, receives food stamps, and watches movies over and over again. Dr. Lanpher observed Claimant's hygiene and dress to be appropriate, her emotions to be depressed, and her affect labile. (Tr. 289). During the mental status examination, Dr. Lanpher found her level of effort to be questionable. (Tr. 290). Dr. Lanpher found Claimant to be functioning within borderline range of intellectual ability and exhibiting symptoms characteristic of severe depression. Dr. Lanpher noted he does not have any past medical records and found Claimant to be a "poor historian, volunteering little information." (Tr. 290). Dr. Lanpher found Claimant to be

moderately to markedly impaired in her ability to understand and remember instructions and sustain concentration; she is markedly impaired in her ability to interact socially; and she is markedly impaired in her ability to adapt to her environment and persist in tasks.  (Tr. 290).

In the April 28, 2011 Psychiatric Review Technique, Dr. Joan Singer found a RFC assessment to be necessary and found Claimant to have a major depressive disorder, recurrent and severe.  (Tr. 291-98).  Dr. Singer found Claimant to have moderate functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. 299).  In the Mental Residual Functional Capacity Assessment, Dr. Singer found Claimant to be moderately limited in her ability to understand and remember detailed instructions and in her ability to maintain attention and concentration for extended periods, to sustain an ordinary routine, and to work in coordination others.  (Tr. 302).  With respect to interact appropriately with the general public, Dr. Singer found her to be moderately limited.  (Tr. 303).  Dr. Singer further found her to be moderately limited in her ability to respond appropriately to changes in the work setting.  (Tr. 303).  In support, Dr. Singer noted how Claimant has no recent medical treatment for mental impairment, and she has reported living alone and having no problems with personal care and being able to cook, do the laundry, dishes, and other house chores.  Dr. Singer opined as follows:

> the claimant's allegations are not fully credible based partly on the inconsistency between claimant's and her mother's statements regarding claimant's functioning. The lack of any current/recent treatment in the context of such severe allegations is also suspect especially when claimant has sought treatment for other complaints in the past.  Claimant scored only 17 out of 30 on the Mini Mental Status but her level of effort was questionable.  The claimant was guarded as she volunteered little information during the interview and was very slow to respond to questions. The MSOs given by the CE psychologist are given little weight as they are based solely on claimant's self-report.  The claimant may have a significant untreated

mental impairment but the evidence does not support the degree of severity alleged. The claimant is capable of at least simple, repetitive work away from the public.

(Tr. 304).

On May 2, 2012, Claimant reported back pain during treatment by Karen Tracy, FNP. (Tr. 314). Examination showed tenderness upon palpitation. (Tr. 315). Ms. Tracy noted her mood to be euthymic. (Tr. 315). She returned for a medication refill on May 9 and reported feeling anxious and overwhelmed. (Tr. 323-24). Ms. Tracy found Claimant to have seasonal pattern depression and noted she would start a medication for depression, and she would see a counselor for evaluation. (Tr. 325). Examination of her lumbar spine on May 21 showed tenderness of lumbar and thoracolumbar spine on palpitation. (Tr. 322).

The May 11, 2012 x-ray of her thoracic spine showed no compression and minimal scoliosis. (Tr. 306). The x-ray of her cervical spine revealed mild straightening of the normal lordotic curve suggesting possible muscle spasm. (Tr. 307). The x-ray of her lumbar spine showed lumbar scoliosis. (Tr. 309).

On June 7, 2012, Claimant had an evaluation for management of mutltifocal pain. (Tr. 330). The doctor noted Claimant to be oriented to time, place, person and situation and to have normal association and judgment. (Tr. 342). The doctor observed Claimant to have normal mental status. The doctor advised her to avoid cigarette smoke and continue with the home exercise program as tolerated. (Tr. 342). Musculoskeletal examination showed tenderness. (Tr. 343). She reported having problems sleeping and being anxious and feeling sad. (Tr. 344). She reported smoking an average of two packages of cigarettes a day. (Tr. 346). On June 21, Claimant returned for a medication follow-up as treatment of her cervical spondylosis and

lumbosacral spondylosis.  (Tr. 328).  The doctor noted urine drug screening medical necessity.

(Tr. 329).  In the activities of daily living, Claimant reported improvement in physical functioning,

family relationship, social relationship, mood, and overall functioning.  (Tr. 329).

The July 9, 2012 MRI showed a minimal disc bulge at the L2-3 level that mildly narrows

the inferiors recesses of the neural foraminal along with a minor left facet arthropathy with a tiny

cynovial cyst along the posterior inferior margin of the left facet joint.  (Tr. 326).  The MRI

further showed minimal disc bulge that produced minor narrowing of the inferior recesses of the

neural foramina at the L3-4 level, and a minor disc bulge that narrows the inferior recesses of the

neural foramina with mild bilateral facet arthropathy that is present which was in conjunction with

the short the short pedicles produces mild bilateral neural foraminal stenosis at the L4-5 level.

(Tr. 326-27).

On August 20, 2012, Dr. Daniel Domjan treated Claimant's chronic pain.  (Tr. 318).  Dr.

Domjan noted her anxiety disorder to be inadequately controlled and her mood to be depressed.

(Tr. 319).  Dr. Domjan discussed his concerns about her tobacco use.  (Tr. 320).

In follow-up treatment on October 15, she reported having low back pain and anxiety.

(Tr. 316).  Dr. Domjan noted her mood to be depressed.  (Tr. 317).  Dr. Domjan continued her

medication regimen and referred to cardiology for chest pain and counseled on cessation of

tobacco use.  (Tr. 317).

In follow-up treatment for chronic pain on November 5, 2012, Claimant reported having

neck and back pain.  (Tr. 373).  Musculoskeletal examination showed tenderness.  (Tr. 375).  She

requested an increased dosage of her pain medications.  (Tr. 377).  On November 5, she received

a verbal warning for an inconsistent low drug urine test.  (Tr. 377).  In follow-up treatment of

December 3, she reported neck pain.  (Tr. 368).  On December 5, she received a lumbar epidural injection as treatment.  (Tr. 364-67).

In follow-up treatment on January 7, 2013, Claimant reported lower back pain.  (Tr. 359).  The doctor observed her gait and station to be normal.  (Tr. 361).  Examination showed tenderness to cervical and lumbar spine and an active range of motion.  (Tr. 362).  She reported her mood to be better with Celexa.  (Tr. 363).

In the February 15, 2013 Intake Narrative at Bootheel Counseling Services and Family Medical Clinic, Claimant reported seeing a counselor in New Madrid one time.  (Tr. 380-82).  She reported working for her biological mother around the house cleaning.  (Tr. 384).  She receives food stamps, child support, and Medicaid.  (Tr. 384).

On February 19, 2013, Dr. Syed Sayeed evaluated Claimant for hallucinations.  (Tr. 387).  She reported she has been working for her mother cleaning her house.  (Tr. 388).  Dr. Sayeed diagnosed her with major depression and continued her Pristiq and prescribed Abilify and Trazodone.  (Tr. 388).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security Act through December 31, 2015.  (Tr. 13).  Claimant has not engaged in substantial gainful activity since October 1, 2010, the amended alleged onset date.  The ALJ found that the medical evidence establishes that Claimant has the severe impairments of scoliosis and depression, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 13).  The ALJ found that Claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, sit six

hours in an eight-hour workday, and stand and/or walk six hours in an eight-hour workday, but she is limited to simple and routine tasks that require at most occasional interaction with coworkers and the public. (Tr. 15). Claimant is unable to perform any past relevant work. (Tr. 18). The ALJ noted she was born on August 9, 1984 and is twenty six years of age so she is a younger individual on the alleged disability onset date. The ALJ noted Claimant completed the ninth grade so she has a limited education and able to communicate in English. (Tr. 18). Considering her age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform such as an inspector, assembly line worker, and hand packer. (Tr. 18-19). The ALJ concluded that Claimant has not been under a disability from October 1, 2010, through the date of the decision. (Tr. 19).

## V.    Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling.  If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled.  20 C.F.R. § 404.1520(d).  If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work.  If the claimant can still perform past work, she is not disabled.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy.  In step five, the ALJ must consider the claimant's "age, education, and past work experience."  Only if a claimant is found incapable of performing other work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-42 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole."  Pearsall, 274

F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Id.  The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is

conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese , 552 F.3d at 730 (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess her credibility. Claimant also contends that the ALJ failed to give proper weight to the opinion of the examining physician Dr. Ben Lanpher.

## A.    Credibility Determination

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess her credibility.

The undersigned will begin with a review of the ALJ's credibility determination. See Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) (it is clearly established that, before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility).

The Eighth Circuit has recognized that, due to the subjective nature of physical symptoms, and the absence of any reliable technique for their measurement, it is difficult to prove, disprove or quantify their existence and/or overall effect. Polaski, 739 F.2d 1321-22. In Polaski, the Eighth Circuit addressed this difficulty and set forth the following standard:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions.

Id. at 1322.

A claimant's complaints of pain or symptoms "shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques." Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) (citing 42 U.S.C. § 423(d)(5)(A)). An ALJ may not disregard subjective complaints merely because there is no evidence to support them, but may disbelieve such allegations due to "inherent inconsistencies or other circumstances." Id. (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)); see also Polaski, 739 F.2d at 1322 (although the ALJ may not accept or reject the claimant's subjective complaints based solely upon personal observations, he may discount such complaints if there are inconsistencies in the evidence as a whole). The "crucial question" is

not whether the claimant experiences symptoms, but whether his credible subjective complaints prevent him from working. Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003). The credibility of a claimant's subjective testimony is primarily for the ALJ, not this Court, to decide, and this Court considers with deference the ALJ's decision on the subject. Tellez, 403 F.3d at 957. When an ALJ considers the Polaski factors and discredits a claimant's subjective complaints for a good reason, that decision should be upheld. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).

The ALJ is not required to discuss methodically the requisite credibility factors if the ALJ cites several valid reasons for the adverse credibility findings. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (credibility determination is entitled to deference if supported by good reasons and substantial evidence). In evaluating Claimant's credibility, the ALJ determined that she was not fully credible, in part because her failure to cooperate by providing answers to the questions posed at the hearing, her treatment history, her poor earnings record, the reason she stopped working, she was "unforthcoming with the consultative psychological examine,." and the lack of objective medical evidence supporting the degree of severity of subjective complaints alleged. In his decision the ALJ thoroughly discussed the medical evidence of record and inconsistencies in the record. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

The ALJ properly considered the inconsistencies between Claimant's allegations of total

disability and the objective medical evidence. The medical record reflects how Claimant did not

seek any medical treatment after the alleged date of disability until eighteen months later on May

2, 2012. This illustrates an inconsistency between Claimant's subjective complaints and the

objective medical evidence. Although Claimant listed back problems as her only physical

impairment allegedly limiting her ability to work, the May 11, 2012 x-rays showed no

compression and minimal scoliosis of her thoracic spine, mild straightening of the normal lordotic

curve suggesting possible muscle spasm of her cervical spine, and lumbar scoliosis of her lumbar

spine. See Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) ("We have been careful to

explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent

inconsistencies or other circumstances."). The objective medical evidence does not support the

degree of severity alleged. See Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ

may determine that "subjective pain complaints are not credible in light of objective medical

evidence to the contrary"); 20 C.F.R. § 404.1529(c)(2). Likewise, the ALJ further found

Claimant's credibility undermined by her failure to consistently seek treatment for her allegedly

disabling impairments. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997) (complaints of

functional limitations are inconsistent with a claimant's failure to seek regular treatment for her

symptoms).

As noted by the ALJ, the medical record shows she did not receive mental health

treatment during the relevant period, although she presented to the emergency room and then was

hospitalized in June 2006, four years prior to her alleged disability onset date of October 1, 2010.

Likewise, an eighteen months passed before she sought any additional treatment. Edwards v.

Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical

treatment detracted from credibility). Such gap suggests that Claimant's subjective complaints of disabling pain are not entirely credible. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain). "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 1994) (holding that infrequent treatment is a basis for discounting subjective complaints).

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

The ALJ also cited Claimant's work history and poor earnings record as additional factors

detracting from her credibility regarding the severity of her impairments alleged and her overall motivation to work versus motivation for benefits inasmuch as her record documents poor and overall inconsistent earnings. The ALJ noted that "she has a poor work history, even for her age, never achieving earnings in excess of substantial gainful activity for an entire year. This demonstrates a lack of work motivation and diminishes her overall credibility." (Tr. 16). A poor work history lessens a Claimant's credibility. See Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th Cir. 2004)(holding that claimant was properly discredited due, in part, to her sporadic work record reflecting low earnings and multiple years with no reported earnings, pointing to potential lack of motivation to work);Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993); see also Ramirez v. Barnhart, 292 F.3d 576, 581-82 (8th Cir. 2002) (poor work record and financial motivation for benefits may contribute to adverse credibility determination when other factors cast doubt upon claimant's credibility); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability."); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms). This is a proper consideration. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011); accord Wildman v. Astrue, 596 F.3d 959, 968-69 (8th Cir. 2010).

Likewise, the ALJ discussed how Claimant alleged she stopped working on the alleged onset date because of back pain but then she reported that her employment ended because she was fired. Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009); Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (explaining it is "relevant to credibility when a claimant leaves work for reasons other than [his] medical condition."); see also Hensley v. Barnhart, 352 F.3d 353, 357

(8th Cir. 2003); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability); Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). The ALJ also discussed how Claimant provided conflicting testimony regarding how he was laid off from his job at the call center. At the hearing, Claimant testified how he had been laid off. But, during the evaluation with Ms. Burner, Claimant noted he had been fired for bogus reasons. See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (an ALJ may discredit claimant based upon statements that conflict with other record evidence). It is well-established that the ALJ is permitted to consider inconsistencies in the evidence and the extent to which there are conflicts between a claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4).

Finally, the ALJ considered that, although Claimant "was entirely unforthcoming about her daily activities" during her testimony at the hearing, she currently raises her young child independently and has a driver's license, and she never presented to a treating or examining source with significant thought disturbance. (Tr. 14). Contradictions between a claimant's sworn testimony and what she actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006). Claimant's daily activities can be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and

attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). The ALJ properly considered the hearing testimony as detracting from Claimant's credibility.

The ALJ further noted how she was "unforthcoming with the consultative psychological examiner." (Tr. 16). When an examining physician expresses doubts about the validity of a claimant's complaints, this is a factor which discounts the claimant's credibility. Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987); see also Baker v. Barnhart, 457 F.3d 882, 892-93 (8th Cir. 2006) (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination) (citing Clay v. Barnhart, 417 F.3d 922, 930 n.2 (8th Cir. 2005) (noting that two psychologists' findings that the claimant was "malingering" on her IQ tests cast suspicion on the claimant's motivations and credibility); Jones v. Callahan, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (holding that exaggeration of symptoms is a factor to be weighed in evaluating subjective complaints of pain); Russell v. Sec'y of Health & Human Servs., 540 F.2d 353, 357 (8th Cir. 1976) (holding that where doctors reported that the claimant was exaggerating her ailments and was uncooperative, the record did not establish the requisite degree of certainty that the claimant was disabled). As such, the undersigned finds that the ALJ properly considered the observations of Dr. Lanpher during the consultative examination.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support her finding that Claimant is not

disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making her credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before her and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included her failure to cooperate by providing answers to the questions posed at the hearing, her treatment history, her poor earnings

record, the reason she stopped working, she was "unforthcoming with the consultative psychological examiner," and the lack of objective medical evidence supporting the degree of severity of subjective complaints alleged. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**B.**     <u>**Weight Given to Examining Doctor**</u>

Claimant also contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to give proper weight to the opinion of the

examining physician Dr. Ben Lanpher.

The undersigned finds that the ALJ considered Dr. Lanpher's opinions and gave little weight to his opinions in his written opinion as follows:

> The undersigned reviewed the opinions of Ben Lanpher, Ph.D., who examined the claimant in March 2011, but assigns his "marked" limitations in social functioning no weight. First, the claimant was not taking any prescribed medications on the date of the examination because she was pregnant. More importantly, Dr. Lanpher clearly relied most extensively on the claimant's subjective complaints and reported history, which includes such things as auditory hallucinations, which are supported nowhere else in the record. Finally, Dr. Lanpher clearly indicated that the claimant's effort during testing was "questionable." No doctor outside Dr. Lanpher has opined that the claimant has greater than "moderate" limitation in this area.

(Tr. 14) (internal citations omitted).

As noted by the ALJ, Dr. Lanpher based his opinions primarily on Claimant's subjective complaints and reported history, which the undersigned has found are not entirely credible. As such, the ALJ was entitled to give little or no weight to Dr. Lanpher's opinion. In the evaluation, Dr. Lanpher noted how Claimant was referred for a psychological evaluation, and "[a]ccording to referral information, claimant is alleging back problems, "inability to focus," depression, and anxiety. No other information was available for review." (Tr. 288). Dr. Lanpher noted he did not have any past medical records and found Claimant to be a "poor historian, volunteering little information." (Tr. 290). Likewise, Dr. Lanpher found Claimant's effort during the evaluation to be questionable. The ALJ properly found the opinion stated is not supported by the evidence as a whole and to be based on Claimant's subjective complaints.

"The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, consistency,

specialization, and other factors.  Generally, more weight is given to opinions of sources who have treated claimant, and to those who are treating sources."  Phillips v. Colvin, 721 F.3d 623, 630-31 (8th Cir. 2013) (quoting Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)).

No examining physician in any treatment notes stated that Claimant was disabled or unable to work or imposed mental limitations on Claimant's capacity for work.  See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints).  The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints.  Renstrom, 680 F.3d at 1065; Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).  Thus, the ALJ did not err in giving little weight to Dr. Lanpher's opinions.  Renstrom,  680 F.3d at 1065 (ALJ properly gave treating physician's opinion non-controlling weight when that opinion was largely based on claimant's subjective complaints and was inconsistent with other medical experts).  As such, the undersigned finds that the ALJ gave proper weight to Dr. Lanpher's opinions.

"It [is] the ALJ's task to resolve the differences between ... consultative examinations in

light of the objective evidence." <u>Dipple v. Astrue</u>, 601 F.3d 833, 836 (8th Cir. 2010); <u>accord</u> <u>Heino v. Astrue</u>, 578 F.3d 873, 879 (8th Cir. 2009). No other doctor found Claimant to have greater than moderate limitations. For the foregoing reasons, the ALJ did not err in his resolution of the various opinions evaluating Claimant.

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." <u>Wiese v. Astrue</u>, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." <u>Id.</u> (quoting <u>Mapes v. Chater</u>, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this  20th  day of January, 2015.